1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   LOURDES A. ACASIO,                          Case No.  14-cv-04689-JSC

          Plaintiff,
8
                                                **ORDER RE: MOTION TO DISMISS**
9        v.                                     **SECOND AMENDED COMPLAINT**

10  SAN MATEO COUNTY, et al.,                    Re:  Dkt. No. 23

          Defendants.
11

12

13         Plaintiff Lourdes Acasio, proceeding pro se, brings this action against the County of San

14  Mateo (the "County") and San Mateo County Sheriff Officers Lucy and Curley (the "Individual

15  Defendants" and, collectively, "Defendants").  (Dkt. No. 11.)  The Second Amended Complaint

16  ("SAC") alleges that Defendants violated her civil rights by humiliating and injuring her during

17  post-arrest booking procedures and ignoring her pleas for medical treatment during booking and

18  thereafter.  Now pending before the Court is Defendants' motion to dismiss the SAC for failure to

19  state a claim upon which relief may be granted.  (Dkt. No. 23.)  Having considered the parties'

20  submissions, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and

21  GRANTS IN PART Defendants' motion to dismiss.

22                                  **BACKGROUND**

23         The following facts are based on the allegations in the complaint and documents of which

24  the Court takes judicial notice.[1]

25  _____

26  [1] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not
    subject to reasonable dispute because it: (i) is generally known within the trial court's territorial
27  jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot
    reasonably be questioned."  Judicial notice is appropriate for "materials incorporated into the
28  complaint or matters of public record."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th
    Cir. 2010).  Here, Defendants request that the Court take judicial notice of two documents related

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1

## I.     Complaint Allegations

The allegations in the SAC were already addressed in the Court's Order reviewing the

SAC pursuant to 28 U.S.C. § 1915(e)(2), which the Court incorporates by reference here.  *See*

*Acasio v. San Mateo Cnty.*, No. 14-cv-04689-JSC, 2015 WL 2411943, at *1-2 (N.D. Cal. May 20,

2015) ("*Acasio III*").   The SAC arises out of Plaintiff's arrest in Daly City on November 30,

2012, and the events that unfolded thereafter during her booking and detention at the San Mateo

County Jail.  (Dkt. No. 11 at 5.)  Plaintiff suffers from a disability: depression.  (*Id.*)  Because of

her depression, she had a panic attack and nervous breakdown during her arrest.  (*Id.*)  During the

booking process that followed, Plaintiff—who requested to see a counselor, was crying

uncontrollably, and was slow to comply with the officer's orders—told San Mateo County Sheriff

Officer "Curley" that she had a disability, suffered from depression, felt dizzy, and needed to go to

the hospital soon.  (*Id.*)  Officer Curley did not believe Plaintiff, and instead of bringing her to the

hospital, continued the booking process.  (*Id.* at 5-6.)  Plaintiff's dizziness worsened as Officer

Curley directed more orders at her.  (*Id.* at 6.)  Officer Curley then called another female officer

into the room.  (*Id.* at 6.)  The two female officers laughed at Plaintiff's body as they ordered her

to strip naked, causing Plaintiff dizziness, anger, and humiliation.  (*Id.*)  The two officers ordered

Plaintiff to sit down, but she did not comply with that request immediately.  (*Id.*)

At that point, one of the officers called for more backup.  (*Id.*)  Male officers entered the

room, including an Officer "Lucy" who rushed into the room, came to the front of Plaintiff—who

was still naked—and pushed her hard down to the floor.  (*Id.* at 6-7.)  Plaintiff landed on her back

on a hard stone chair, which caused her to injure her back, hip, and knees, causing pain and

making it difficult for her to sit for long periods of time.  (*Id.* at 7, 10.)  Plaintiff continued to cry

---

to Plaintiff's action in San Mateo County Superior Court.  (Dkt. No. 23-5.)  Exhibit A is the state-
court complaint she filed against the San Mateo County Sheriff's Office, and Exhibit B is the
Court's order granting Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 23-1, 23-2.)
It is well established that the Court may take judicial notice of records from other proceedings not
to credit the truth of the allegations or facts set forth therein, but rather "for purposes of noticing
the existence of the [prior] lawsuit, the claims made in the lawsuit, and the fact that various
documents were filed therein."  *McMunigal v. Bloch*, No. C 1002765 SI, 2010 WL 5399219, at *2
(N.D. Cal. Dec. 23, 2010) (citation omitted).  The Court therefore GRANTS Defendants' request
for judicial notice of these documents.

while she told the officers in the room that she had a disability.  (*Id.* at 7.)

After the initial booking incident, Plaintiff was seen by a nurse in the jail clinic and informed her, too, that she wanted to see a doctor because of her panic attack, depression, and dizziness.  (*Id.* at 8.)  The nurse informed Plaintiff that she had high blood pressure but provided no medication.  (*Id.*)  Plaintiff asked the nurse to see a doctor, but the nurse informed her that no doctor was available that day or that night, and that Plaintiff would either be in the jail generally or in isolated confinement if she showed signs of depression.  (*Id.*)  On this issue, more generally, Plaintiff alleges that there is no doctor available to inmates at the San Mateo County Jail for emergency situations.  *(Id.* at 6.)  The only opportunity to see a doctor is if there is a scheduled appointment during the morning or afternoon.  (*Id.*)  In the evenings there is no doctor available or hospital allowed for inmates with serious medical needs.  (*Id.*)  Plaintiff also alleges that the San Mateo County Jail has no policy providing a doctor or hospital for inmates in need of emergency medical attention.  (*Id.* at 8.)

In Plaintiff's booking photo, her eyes were so swollen from crying that days later she was called to re-take the picture so she would not look so depressed in the picture.  (*Id.* at 9)  After the picture was taken, Plaintiff again requested to see a doctor.  (*Id.*)  At some point, Plaintiff was brought out of the confinement area for an interview.  (*Id.*)  Plaintiff, crying very hard, informed the interviewer that she had depression, was not feeling well, was experiencing a nervous breakdown and panic attack, and needed to see a doctor.  (*Id.*)  The interviewer ignored her pleas. (*Id.*)  That night, Plaintiff was transferred to the Women's Correctional area, where she again asked to see a doctor.  (*Id.* at 10.)  Because no doctor was available and there is no emergency hospital-visit protocol, Plaintiff was placed in isolated confinement.  (*Id.*)

## II.   Procedural History

On June 13, 2013, Plaintiff filed an action in San Mateo County Superior Court against the Maguire Correctional Facility – San Mateo County Sheriff's Office for personal injury and violation of her civil rights.  (Dkt. No. 23-1 at 2-3.)  Though there was no factual recitation in the state court complaint, Plaintiff attached and incorporated into the pleading a typed letter and a hand-written grievance decrying the same events described above arising out of her November 30,

1  2012 arrest and booking.  (*See id.* at 8-15.)  On February 4, 2014, the superior court entered an

2  order granting Defendant's motion for judgment on the pleadings based on Plaintiff's failure to

3  exhaust administrative remedies.  (Dkt. No. 23-2 at 3 ("Court's Decision based solely on failure to

4  exhaust administrative remedies.").)  The court gave Plaintiff leave to amend the complaint within

5  45 days of that order.  (*Id.*)  In May of 2014, the superior court dismissed the action without

6  prejudice due to Plaintiff's failure to amend her complaint within 45 days.  (Dkt. No. 23-3.)

7         Plaintiff filed this action on October 21, 2014.  (Dkt. No. 1.)  The Court previously

8  dismissed Plaintiff's complaints with leave to amend, finding that her allegations failed to state a

9  claim upon which relief could be granted for the purposes of Section 1915 review.  *Acasio v. San*

10  *Mateo Cnty. Sheriff's Office*, No. 14-cv-04690-JSC, 2015 WL 1090881, at *5 (N.D. Cal. Mar. 12,

11  2015) ("*Acasio II*"); *Acasio v. San Mateo Cnty. Sheriff's Office*, No. 14-cv-04689-JSC, 2015 WL

12  333011, at *6 (N.D. Cal. Jan. 23, 2014) ("*Acasio I*").  Plaintiff then filed the three-count SAC,

13  which brings claims under 42 U.S.C. § 1983 against the individual officers and the County for

14  inadequate medical treatment, excessive force, and disability discrimination.  (Dkt. No. 11.)  On

15  Section 1915 review, the Court dismissed Plaintiff's disability discrimination claims and her

16  excessive force claim against the County both for failure to state a claim.  However, the Court

17  allowed the SAC to proceed to service solely on Plaintiff's claim against the County for

18  inadequate medical treatment and her claim against Officer Lucy for excessive force, but did so

19  without prejudice to Defendants moving to dismiss the claims on any grounds.  *See Acasio III*,

20  2015 WL 2411943, at *1, 4.

21         Defendants now move to dismiss the SAC because claim preclusion bars Plaintiff's claims,

22  the claims are time-barred, the officer is entitled to qualified immunity, and failure to state a

23  *Monell* claim against the county.[2]  (Dkt. No. 23.)  When Plaintiff missed her deadline to oppose

24  the motion, the Court ordered Plaintiff to show cause why Defendant's motion should not be

25  granted.  (Dkt. No. 27.)  Plaintiff filed a late opposition brief, along with a request to excuse the

---

[2] While the introduction to Defendants' motion also argued for dismissal on the grounds that Plaintiff failed to exhaust grievance procedures required under the Prison Litigation Reform Act, Defendants did not make this argument in the substance of their motion.

4

1   delay, by the show cause deadline.  (Dkt. No. 29.)  In light of Plaintiff's pro se status and the

2   Court's preference to resolve matters on the merits, the Court will consider Plaintiff's late-filed

3   opposition.

4                                   **LEGAL STANDARD**

5          A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege

6   "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

7   550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but

8   mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*,

9   556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  For purposes of ruling on

10  a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and

11  construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St.*

12  *Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on

13  either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

14  cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.

15  2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319,

16  326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue

17  of law.").

18         Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under

19  which a party is only required to make "a short and plain statement of the claim showing that the

20  pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic

21  recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting

22  *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations of law and unwarranted inferences are

23  insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.

24  2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint

25  or counterclaim may not simply recite the elements of a cause of action, but must contain

26  sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

27  defend itself effectively."), *cert. denied*, 132 S. Ct. 2101 (2012).  The court must be able to "draw

28  the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

United States District Court
Northern District of California

5

at 663.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 663-64.

Pro se pleadings are generally liberally construed and held to a less stringent standard.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal* noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt."  *Id.* at 342 (internal quotation marks and citations omitted).  Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

Defendants argue that Plaintiff's claims must be dismissed because (1) claim preclusion bars Plaintiff's claims; (2) the claims are time-barred under the statute of limitations; (3) Officer Lucy is entitled to qualified immunity; and (4) the SAC fails to state a *Monell* claim against the County.  The Court will address each challenge in turn.

### I.       Claim Preclusion

A defendant may raise the affirmative defense of claim preclusion by motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Scott v. Kuhlman*, 746 F.2d 1377, 1378 (9th Cir. 1984).  The Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."  U.S. Const. art. IV, § 1.  To effectuate this provision and extend its reach to the federal courts, Congress enacted 28 U.S.C. § 1738, which provides that the "Acts, records, and judicial proceedings" of "any State . . . of the United States . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken."  Section 1738 requires that federal courts "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012)(citing to *Migra v.*

1    *Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984)).  Accordingly, because this case

2    involves a prior action in California state courts, the Court applies California law

3    on claim preclusion.  In California, claim preclusion "precludes a party from relitigating (1) the

4    same claim, (2) against the same party, (3) when that claim proceeded to a final judgment on the

5    merits in a prior action."  *Adam Bros. Farming v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1148-49

6    (9th Cir. 2010) (internal citation omitted).  Although Plaintiff's opposition is not entirely clear, she

7    appears to concede that the first two elements are met, as she only argues that the third element—

8    final judgment on the merits—is absent here.[3]  (*See* Dkt. No. 29 at 9.)  *See Ardente, Inc. v.*

9    *Shanley*, No. 074479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to

10   respond to this argument and therefore concedes it through silence.").

11          It is well established that an order dismissing a case *with* prejudice constitutes a final

12   judgment on the merits under California claim preclusion law.  *See Boeken v. Philip Morris USA,*

13   *Inc.*, 48 Cal. 4th 788, 804 (2010); *see also O'Connor v. Nationstar Mortg., LLC*, No. 13-CV-

14   05874 NC, 2014 WL 1779338, at *8 (N.D. Cal. May 5, 2014) (finding the requirement of final

15   judgment on the merits satisfied by the state court sustaining defendants' demurrers to the

16   complaint without leave to amend); *Brambila v. Wells Fargo Bank*, No. 12-CV-04224 NC, 2012

17   WL 5383306, at *3 (N.D. Cal. Nov. 1, 2012) (state court's dismissal of plaintiff's case following a

18   failure to amend the complaint to state a claim constituted a final judgment on the merits).  "The

19   statutory term 'with prejudice' clearly means the plaintiff's right of action is terminated and may

20   not be revived[, so] . . . a dismissal with prejudice . . . bars any future action on the same subject

21   matter."  *Roybal v. Univ. Ford*, 207 Cal. App. 3d 1080, 1086-87 (1989).

22          In Plaintiff's state action, the superior court sustained Defendant's motion for judgment on

23   the pleadings and gave Plaintiff 45 days to file an amended complaint.  (Dkt. No. 23-2.)  After

24   plaintiff failed to amend the complaint, the superior court dismissed the action expressly "without

25

26   ───────────────────────

27   [3] Defendants' reply asserts that Plaintiff did not respond to Defendants' argument about claim
     preclusion and instead merely reiterates the factual allegations of the SAC.  (Dkt. No. 31 at 1-2.)
     Not so.  While Plaintiff's opposition begins with a factual recitation that is a copy of portions of

28   the SAC (Dkt. No. 29 at 3-8), thereafter Plaintiff responds to each of Defendants' arguments for
     dismissal, including that claim preclusion and the statute of limitations bars her claims.

*United States District Court*
*Northern District of California*

prejudice." (Dkt. No. 23-3.) Defendants contend that "the Superior Court's order granting the defendant's motion for judgment on the pleadings fulfills" the final-judgment-on-the merits requirement. (Dkt. No. 23 at 11.) It might have, had the order of dismissal been with prejudice as the cases cited above. But Defendants have not cited any authority holding that a dismissal "without prejudice" constitutes a final judgment on the merits for the purposes of claim preclusion. Indeed, California law is to the contrary. *Gagnon Co. v. Nevada Desert Inn,* 45 Cal.2d 448, 455 (1955) ("A dismissal without prejudice . . . is not a bar to another action by the plaintiff on the same cause."); *see also Nolan v. Workers' Comp. Appeals Bd.*, 70 Cal. App. 3d 122, 128 (1977) (explaining that a dismissal without prejudice "does not bar a subsequent action on the same cause filed within the applicable statutory period."). Because there was no final judgment on the merits in the earlier action, claim preclusion does not prohibit Plaintiff from bringing these claims now.

## II.     Statute of Limitations

Defendants next contend that Plaintiff's Section 1983 claims are time-barred. Under California law—which governs the applicable statute of limitations—a two-year statute of limitations applies to personal injury claims, including Section 1983 actions. Cal. Code Civ. Proc. § 335.1; *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011) ("The statute of limitations applicable to an action pursuant to 42 U.S.C. § 1983 is the personal injury statute of limitations of the state in which the cause of action arose."); *see, e.g., Thompson v. City of Shasta Lake*, 314 F. Supp. 2d 1017, 1023 (E.D. Cal. 2004). To determine when that two-year statutory clock begins to run for a Section 1983 claim in federal court, federal law applies. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Under federal law, the so-called "discovery rule" provides that "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 991-92 (citation omitted).

The injuries related to Plaintiff's arrest and booking are alleged to have occurred in November 2012. The statutory period expired two years later, in November 2014. *See* Cal. Code Civ. Proc. § 335.1. Plaintiff filed the instant SAC approximately five months later, on April 8, 2015. (Dkt. No. 1.) However, Plaintiff filed her initial complaint in October 2014, which would

1   have been timely.

2          The Court now considers whether Plaintiff's claims in the SAC relate back to the initial

3   complaint.  Although Plaintiff did not argue relation back, especially given her pro se status, the

4   Court will consider it *sua sponte*.  *See, e.g.*, *Garland v. Lewis*, No. CV 10-9010 FMO (OPx), 2013

5   WL 4198278, at *2 (C.D. Cal. Aug. 12, 2013) (examining whether pro se plaintiff's claims relate

6   back even though the plaintiff had only generally argued that his claims were not time-barred).

7   When a federal cause of action is brought under 42 U.S.C. § 1983, "the relation back provisions of

8   state law, rather than [Federal Rule of Civil Procedure] 15(c) govern[.]" *Merritt v. Cnty. of Los*

9   *Angeles*, 875 F.2d 765, 768 (9th Cir. 1989); *see, e.g.*, *Garland*, 2013 WL 4198278, at *2.  An

10  amended complaint relates back to the original complaint under California law "if the amended

11  complaint . . . (1) rest[s] on the *same general set of facts*, (2) involve[s] the *same injury*, and (3)

12  refer[s] to the *same instrumentality*, as the original one." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383,

13  408-09 (1999) (emphasis in original); *M.G. ex rel. Goodwin v. Cnty of Contra Costa*, No. C 11-

14  04853 WHA, 2013 WL 706801, at *4 (N.D. Cal. Feb. 26, 2013) (same).

15         Put another way, an amended complaint may "relate[ ] back to a timely filed original

16  complaint, and thus avoid[ ] the bar of the statute of limitations, only if it rests on the same general

17  set of facts and refers to the same 'offending instrumentalities,' accident and injuries as the

18  original complaint." *Davaloo v. State Farm Ins. Co.*, 135 Cal. App. 4th 409, 415 (2005).  But

19  even if an earlier complaint rests on the same set of facts, the amended complaint may not relate

20  back unless "a reasonable defendant [would] have understood the [original] complaint to allege

21  that it was some way responsible for plaintiff's injury[.]" *Bell v. Tri-City  Hosp. Dist.*, 196 Cal.

22  App. 3d 438, 449 (1987), *disapproved of on other grounds by State v. Super. Ct. (Bodde)*, 32 Cal.

23  4th 1234 (2004).  Thus, "[t]he relation-back doctrine is inapplicable . . . where [a plaintiff]

24  attempts to relate back an amended [complaint] to a complaint which failed to name [defendant] or

25  any Doe defendants." *Kralow Co. v. Sully-Miller Contracting Co.*, 168 Cal. App. 3d 1029, 1035-

26  36 (1985); *see also Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 683 (9th Cir. 1980) ("Under

27  California law, if a defendant is added to an amended complaint as a new defendant, and not as a

28  Doe defendant, the amendment does not relate back to the time of the original complaint.").

1   Plaintiff's SAC relates back to the timely filing of the initial complaint.  First, the

2   underlying facts of the SAC claims arise out of the same set of facts alleged in the initial

3   complaint: injuries Plaintiff sustained during her November 2012 arrest and booking.  Indeed,

4   many of the factual allegations are repeated verbatim, but the claims themselves have been

5   clarified.  Thus, plainly the SAC and initial complaint involve the same "accident and injuries" as

6   the original complaint which suffices for relation back.  *Davaloo*, 135 Cal. App. 4th at 415.  The

7   slightly different named defendants do not change the Court's conclusion.  The initial complaint

8   named as defendants the County of San Mateo and Doe Defendants.  (Dkt. No. 1 at 1-2.)  While

9   the SAC explicitly brings claims against two individual officers, the factual allegations of the SAC

10   referred to Officers Curley and Lucy, their names were in quotations as if Plaintiff did not know

11   their true names or identities, and she listed Doe defendants in the case caption.  (*Id.* at 4.)  The

12   claims against the individual defendants relate back to the initial complaint against the Does.  *Cf.*

13   *Krakow*, 168 Cal. App. 3d at 1035-36.  Thus, Plaintiff's claims are not barred by the statute of

14   limitations.[4]

15   **III.    Qualified Immunity**

16   Defendant's third argument for dismissal is that Officer Lucy is insulated from liability for

17   excessive force because Plaintiff cannot establish that his actions as alleged in the SAC constitute

18   a violation of a clearly established constitutional right.

19   "The doctrine of qualified immunity protects government officials from liability for civil

20   damages insofar as their conduct does not violate clearly established statutory or constitutional

21   rights of which a reasonable person would have known."  *Stanton v. Sims*, 134 S.Ct. 3, 5 (2013)

22

23   ―――――――――――――――

[4] Given the Court's conclusion that the statute of limitations does not bar Plaintiff's claims, the
24   Court need not address Plaintiff's argument that she is entitled to the benefit of California Code of
Civil Procedure 352.1(a), which tolls the statute of limitations for the continuous period of
25   imprisonment following the accrual of a plaintiff's claim.  Cal. Code Civ. Proc. § 352.1(a); *Rollin
v. Cook*, 466 F. App'x 665, 667 (9th Cir. 2012) ((holding that a plaintiff's claim was not time-
26   barred because his dates of incarceration were not continuous from the accrual date of his Section
1983 claim) (citation omitted).  And in any event, the SAC does not allege any facts that would
27   support tolling.  While Plaintiff includes some facts about her incarceration in her opposition to
Defendants' motion to dismiss (*see* Dkt. No. 29 at 10), the Court does not consider new facts
28   alleged in a plaintiff's opposition to a motion to dismiss that are not in the pleading itself.  *See
Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) (citation omitted).

United States District Court
Northern District of California

1  (quotation marks and citation omitted); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

2  "Qualified immunity gives government officials breathing room to make reasonable but mistaken

3  judgments, and protects all but the plainly incompetent or those who knowingly violate the law."

4  *Stanton*, 134 S.Ct. at 5 (quotation marks and citation omitted).  "Qualified immunity shields an

5  officer from suit when she makes a decision that, even if constitutionally deficient, reasonably

6  misapprehends the law governing the circumstances she confronted."  *Brosseau v. Haugen*, 543

7  U.S. 194, 198 (2004).

8          An officer is entitled to qualified immunity unless (1) the facts that a plaintiff has alleged

9  make out a violation of a constitutional right, and (2) the right was "clearly" established at the time

10  of the alleged misconduct.  *Pearson*, 555 U.S. at 232. If the answer to the first prong is "no," then

11  the inquiry ends there, and the plaintiff cannot prevail; if the answer is "yes," then the court must

12  address the second prong.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under the second

13  prong, the court considers "whether the right was clearly established" applying an "objective but

14  fact-specific inquiry."  *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007); *see Saucier*, 533 U.S.

15  at 202.  The question is whether "the contours of the right were sufficiently clear that a reasonable

16  official would understand that what he is doing violates the right."  *Saucier*, 533 U.S. at 202.  "The

17  relevant dispositive inquiry in determining whether a right is clearly established is whether it

18  would be clear to a reasonable officer that his conduct was unlawful in the situation he

19  confronted."  *Id.*  The court's "task is to determine whether the preexisting law provided the

20  defendants with fair warning that their conduct was unlawful."  *Elliot-Park v. Manglona*, 592 F.3d

21  1003, 1008 (9th Cir. 2010).

22          Whether a right is clearly established must be "undertaken in light of the specific context

23  of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201.  When making this

24  determination, courts must consider the state of the law at the time of the alleged violation, though

25  there need not be a case holding the precise conduct in question unlawful.  *See Inouye*, 504 F.3d at

26  712.  The court also considers the information the officer possessed at the time of the conduct.  *See*

27  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  Putting these two concepts together an officer is

28  entitled to qualified immunity if a reasonable officer could have believed the action to be lawful

United States District Court
Northern District of California

11

given the clearly established law and information available the officer possessed. *Id.* An officer who reasonably, but mistakenly, believes that his conduct did not violate a clearly established constitutional right is still entitled to the protection of qualified immunity. *Saucier*, 533 U.S. at 205-06.

Plaintiff's claim is for excessive force during pretrial detention, which arises under the Fourteenth Amendment. "The Due Process clause protects pretrial detainees from the use of excessive force that amounts to punishment. Although the Supreme Court has not expressly decided whether the Fourth Amendment's prohibition on unreasonable searches and seizures continues to protect individuals during pretrial detention, [the Ninth Circuit has] determined that the Fourth Amendment sets the applicable constitutional limitations for considering claims of excessive force during pretrial detention." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002) (internal quotation marks and citations omitted). Thus, *Graham v. Connor*, 490 U.S. 386 (1989), "explicates the standards applicable to a pretrial detention excessive force claim in this circuit." *Gibson*, 290 F.3d at 1197. Under *Graham*, officers may not use excessive force but may use a reasonable level of force "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (1989); *see also Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2476 (2015) (emphasizing that "an objective standard [of reasonableness] is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment"); *White v. Roper*, 901 F.3d 1501, 1507 (9th Cir 1990).

Defendants do not dispute that drawing all inferences in Plaintiff's favor—even if the [SAC] implies that [the] officer rushed Plaintiff in a good faith attempt to maintain discipline—*i.e.*, to get Plaintiff to comply with the order to undress—the [SAC] sufficiently alleges facts that plausibly establish that [Officer Lucy's] force was not needed under the circumstances presented, certainly not the amount of force used." *Acasio III*, 2015 WL 241193, at *4 (quotation marks and citation omitted) (final alteration in original). Instead, Defendants argue that Plaintiff's claim fails on the second prong of the *Saucier* analysis. Not so. Taking the facts alleged in the SAC as true, Officer Lucy violated Plaintiff's clearly established right to be free from excessive force. *See*

1   *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003) ("[T]he law regarding a prison guard's

2   use of excessive force was clearly established by 1994[.]").  "In assessing the state of the law at

3   the time [of the incident], [the Court] look[s] no further than *Graham*'s holding that force is only

4   justified when there is a need for force."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th

5   Cir. 2007).  Under the facts alleged in the SAC, no reasonable officer could believe that it was

6   necessary—and therefore objectively reasonable—to rush and effectively tackle a person who is

7   simply slow to comply with instructions, in tears, and complaining of dizziness but not posing any

8   threat to the officers or others.  This holding is consistent with the Ninth Circuit's precedent in

9   analogous Fourth Amendment cases examining use of force.  *See id.* (finding on review of a

10  summary judgment order that qualified immunity did not apply to the officers' tackle of plaintiff

11  who did not pose a serious threat to the officers' or others' safety).  Consequently, at this early

12  stage of the proceedings qualified immunity does not attach, so Defendants' motion to dismiss the

13  excessive force claim against Officer Lucy is denied.

## IV.    Municipal Liability

15          The other remaining cause of action is that the County violated Plaintiff's rights by

16  knowingly failing to provide adequate medical treatment.[5]  While the Court earlier determined that

17  the SAC adequately states a claim for inadequate medical treatment and municipal liability, that

18  conclusion was without prejudice to Defendants moving for dismissal on any grounds.  *Acasio III*,

19  2015 WL 2411943, at *3.  Defendants contend that Plaintiff has failed to plead any of the requisite

20  elements of municipal liability.

21          To state a claim for municipal liability, a plaintiff must show (1) she possessed a

22  constitutional right of which she was deprived; (2) the entity had a policy; (3) the policy amounts

23  to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy is the moving

---

25  [5] While the Court earlier construed Plaintiff's deliberate indifference to medical treatment as a
    claim under the Eighth Amendment, because she was a pretrial detainee her rights derived from

26  the due process clause rather than the Eighth Amendment's protection against cruel and unusual
    punishment.  *See Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citations

27  omitted).  This is, effectively, a distinction without a difference because "[w]ith regards to medical
    needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment

28  imposes: persons in custody ha[ve] the established right to not have officials remain deliberately
    indifferent to their serious medical needs."  *Id.* (internal quotation marks and citation omitted).

United States District Court
Northern District of California

force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

With respect to the first element, Plaintiff alleges that her rights were violated because Defendants were deliberately indifferent to her requests for medical treatment. To establish deliberate indifference, a detainee "need not prove that he was completely denied medical care." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc); *see Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012) (finding medical and custodial prison staff deliberately indifferent to prisoner's serious medical needs even though prisoner was provided with some medical care during the period in question). Instead, the detainee need only plausibly allege (1) a serious medical need and (2) a deliberately indifferent response. The serious medical need can be shown by "demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (internal quotation marks and citation omitted). Second, a deliberately indifferent response is "a purposeful act or failure to responds to a prisoner's pain or possible medical need" and "harm caused by the indifference." *Id.* (internal quotation marks and citation omitted). In short, a prison official is deliberately indifferent if she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Notably, differences of opinion between the prisoner and the medical staff regarding the appropriate treatment does not amount to deliberate indifference. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Here, the SAC alleges that Plaintiff repeatedly informed jail staff that she wanted to go to the hospital because she was suffering from both mental health issues—*e.g.*, a panic attack, depression, and nervous breakdown manifesting in uncontrollable crying—and physical symptoms—*e.g.*, dizziness and injuries to her hip and back resulting from the booking incident. (Dkt. No. 11 at 8.) In their motion, Defendants have not seriously challenged the existence of this element—*i.e.*, that Plaintiff had an objectively serious medical need that warranted medical attention. However, Defendants urge that there was no deliberate indifference because, subsequent to her requests for medical attention, Plaintiff alleges that she was actually seen and

14

treated by a nurse, whom she told she was having a panic attack and was depressive and dizzy.
(*Id*.)  The nurse checked Plaintiff's blood pressure but did not provide any medication.  (*Id*.)  Even
accepting all of these allegations as true, Plaintiff has not stated a claim for violation of her due
process rights against deliberate indifference to medical treatment.  Though Plaintiff might have
wished to see a doctor, the facts in the SAC indicate that the nurse evaluated her medical
condition.  Put simply, Plaintiff was given medical treatment.  There is no plausible indication in
the SAC that Plaintiff's disagreement with the nurse's treatment amounts to deliberate
indifference. *See Jackson*, 90 F.3d at 332.  Aside from the general allegation that Plaintiff was
injured from being in jail (Dkt. No. 11 at 9), there are no other facts that suggest that the County's
failure to bring Plaintiff to the hospital on the first day of her arrest and booking caused her
condition to tangibly deteriorate; absent this harm, Plaintiff cannot state a claim.  *See Wilhelm*,
680 F.3d at 1122.  Thus, Plaintiff has not shown violation of a constitutional right.

   And in any event, Plaintiff has not alleged facts plausibly showing that the County has an
actionable policy.  *Plumeau*, 130 F.3d at 438.  A plaintiff may satisfy this element in one of two
ways: either (1) showing that the municipality had an actual policy that motivated the wrong; or
(2) showing that the municipality failed to train or supervise its employees.  *See Gibson*, 290 F.3d
at 1193-95.  Here, Plaintiff alleges that former theory: that the County's actual policy was to
refuse to provide emergency medical treatment to pretrial detainees.  (Dkt. No. 11 at 8.)  She also
alleges that the clinic nurse told her that there was no doctor available that day.  (*Id.*)  And it is
clear that Plaintiff was not taken to the hospital.  But Plaintiff has not adequately alleged that the
County *never* takes detainees to the hospital other than through conclusory allegations.  In short,
Plaintiff has not adequately alleged that the County has a policy of depriving inmates of their
constitutional right to adequate medical treatment.  As a result, the municipal liability claim for
deliberate indifference against the County is dismissed.

   This dismissal is without prejudice.  Although Plaintiff has had two opportunities to amend
her claim, she did so in the context of Section 1915 review with the Court alone, without having
deficiencies highlighted by an adversary.  The Court is not convinced that leave to amend would
be futile.  If Plaintiff wishes to amend this claim, she must include factual allegations that indicate

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1  why the treatment by the nurse was insufficient, how the County's failure to provide treatment by

2  a doctor or at the hospital caused Plaintiff further harm, and actual facts—aside from conclusory

3  allegations—from which the Court can draw an inference of the existence of a County policy of

4  refusal to provide emergency medical treatment to pretrial detainees.

5                                                      **CONCLUSION**

6          For the reasons described above, neither claim preclusion nor the statute of limitations bars

7  Plaintiff's claims.  The SAC states a claim for excessive force against Officer Lucy, but fails to

8  state a claim against the County for deliberate indifference to medical treatment as written.

9  Plaintiff shall have leave to file a third amended complaint by October 8, 2015.  Failure to file an

10  amended complaint will result in dismissal of the deliberate indifference claim against the County

11  with prejudice.  The Court reminds Plaintiff that she may seek assistance from Northern District's

12  Pro Se Help Desk, United States Courthouse, San Francisco, 450 Golden Gate Avenue, 15th

13  Floor, Room 2796, San Francisco, CA 94102 or the Help Desk at the Oakland Federal

14  Courthouse, 1301 Clay Street, 4th Floor, Room 470S, Oakland, CA  94612.  Appointments can be

15  made in person or by calling 415-782-8982.

16          Because the case will proceed regardless of whether Plaintiff chooses to and can state a

17  claim for municipal liability, the Court schedules a case management conference for **October 29,**

18  **2015 at 1:30 p.m.**  The parties are directed to file a Joint Case Management Conference Statement

19  one week before the conference.

20          This Order disposes of Docket No. 23.

21          **IT IS SO ORDERED.**

22  Dated: September 22, 2015

23

24                                                              _Jacqueline Scott Corley_

25                                                              JACQUELINE SCOTT CORLEY
                                                              United States Magistrate Judge

26

27

28

                                                              16