UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LOURDES A. ACASIO, | Case No. 14-cv-04689-JSC |
| Plaintiff, | |
| v. | **ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CERTAIN AFFIRMATIVE DEFENSES** |
| OFFICER PATRICK LUCY, | |
| Defendant. | Re: Dkt. Nos. 98, 102 |

Plaintiff Lourdes Acasio alleges that Defendant San Mateo County Sheriff Correctional Officer Patrick Lucy violated her civil rights by injuring her during post-arrest booking procedures in the county jail. Now pending before the Court is Defendant's Motion for Summary Judgment (Dkt. No. 98) and Plaintiff's Motion for Partial Summary Judgment on Certain Affirmative Defenses (Dkt. No. 102). After considering the parties' submissions and having had the benefit of oral argument on April 6, 2017, the Court DENIES Defendant's motion and GRANTS Plaintiff's motion as set forth below.

## BACKGROUND

**I.    Summary Judgment Evidence**

  A.    *Policies at Maguire Correctional*

This case involves an incident that occurred while Plaintiff was booked into custody at the Maguire Correctional Facility in San Mateo County. Before turning to the incident itself, a brief sketch of relevant policies at Maguire is helpful.

First, standing booking procedure at Maguire involves searching and documenting an inmate, making sure the inmate is medically cleared, determining if the inmate has been housed at the jail before, determining their bail situation, photographing, fingerprinting, and itemizing the

inmate's property. (Dkt. No. 98-4 at 7-8.) If the inmate is going to be housed at Maguire and not released, staff performs a strip search of the inmate. (Dkt. No. 98-4 at 8.) During a strip search, staff of the same gender is assigned to the inmate—that is, a female officer searches a female inmate—but the inmate undresses herself; officers do not touch the inmate. (*Id*. at 8-9.) Sergeant Denise Curley[1] explained that generally only one officer conducts the search unless the inmate is combative or the officer is otherwise unable to control the inmate. (*Id.* at 9.) If an officer calls for backup during a strip search, the gender requirements are not followed. (Dkt. No. 100-3 at 7-8.)

According to Officer Lucy, who has been a correctional officer since 1999, officers at Maguire follow a "continuum of force" policy to ensure safety of inmates and staff. (Dkt. No. 98-2 at 17.) He testified that the first level of force is "command presence," which involves only the presence of an officer in the room, followed by "light touch." (*Id.*) After light touch, the level of force increases up to lethal force. (*Id.*) The written County policy provides that "[p]hysical force"—which Officer Lucy explained includes light touch—will only be used in cases of self-defense, protection of others, prevention of escape, protection of property, and when necessary to control an inmate." (*Id.* at 17-18.) County police instructs officers to "use only the amount of force that is necessary to gain and maintain control . . . ." (*Id.* at 18.) Officer Lucy testified that when officers use force beyond light touch, they notify their superiors. (*Id.* at 19-20.)

The Sheriff's Department also has a policy regarding mentally or developmentally disabled inmates. (Dkt. No. 100-2 at 19-21; Dkt. No. 100-9.) One of the guidelines for officers' supervision of such inmates instructs officers to be patient because "[t]hese people may need more time to act and react than other inmates." (*Id.* at 20.)

B.    *Plaintiff's Booking*

On November 30, 2012 Plaintiff was booked into the Maguire Correctional Facility ("MCF") following her arrest for altering checks. (Dkt. No. 98-2 at 7-8; Dkt. No. 98-3 at 11; Dkt. No. 100-1 at 3-4.) Plaintiff has a history of depression stemming from a work-related head injury in 1997 or 1998 and a history of back pain and sciatica dating back to a 2004 work-related injury

---

[1] Sergeant Curley was an officer at the time of the incident but has since been promoted to sergeant; the Court refers to her by her current rank.

when she fell onto her back and right hip, though she later testified that she did not remember that injury.  (Dkt. No. 98-3 at 6-7, 8-10.)

Plaintiff testified that her "mind [was] not clear" on the day of the arrest, so she was unable to testify about certain things, like the amount of time it took before she arrived in the intake area or remembering dates or times.  (Dkt. No. 98-3 at 5, 26.)  At one point she explained that she suffered a nervous and emotional breakdown in the jail, which makes it difficult for her to remember things.  (Dkt. No. 100-1 at 28.)  Elsewhere she testified that she blacked out from the time of her arrest until the night after the injury when she was in the women's jail.  (Dkt. No. 10-1 at 36-38.)  However, she recalls getting fingerprinted in the middle of an open room at MCF— likely the intake area—then sitting in a search cell crying.  (Dkt. No. 98-3 at 5, 11; *see also* Dkt. No. 98-2 at 9.)  A search cell is an eight by ten-foot room with a concrete floor and a concrete chair or bench.  (Dkt. No. 100-2 at 9; Dkt. No. 100-1 at 23, 45.)  It is located in the middle of the intake area.  (Dkt. No. 100-2 at 8.)  The search cell door is not soundproof, so officers standing in the intake area can hear inside the search cell.  (*Id.*)

Sergeant Curley and Officer Lucy were working in Maguire's intake area that day.  (Dkt. No. 98-2 at 7-8.)  Following the jail's strip search protocol, Sergeant Curley entered the search cell with Plaintiff and instructed her to undress.  (Dkt. No. 98-2 at 9-10; Dkt. No. 98-3 at 13-14.)  Sergeant Curley does not remember searching Plaintiff that day or any of the events that followed.  (Dkt. No. 100-3 at 10, 13.)  Plaintiff testified that after being told to undress, she continued to cry, told Sergeant Curley that she had a disability, was not feeling well, and was experiencing dizziness.  (Dkt. No. 98-3 at 14; Dkt. No. 100-1 at 13.)  According to Plaintiff, Sergeant Curley told Plaintiff that she was "making up that story."  (Dkt. No. 98-3 at 14-15; Dkt. No. 100-1 at 13.)  Plaintiff explained that, despite not feeling well, she was slowly complying with the officer's order to undress and in fact managed to undress completely.  (Dkt. No. 98-3 at 15-16.)  Officer Lucy recalls hearing, from the intake area, Plaintiff being argumentative and loud inside the search cell, screaming and yelling.  (Dkt. No. 98-2 at 9-10.)

The parties offer two competing versions of what happened next.  Plaintiff testified that Sergeant Curley told her once to "get down" or sit down to check Plaintiff's bottom.  (Dkt. No.

3

98-3 at 15; Dkt. No. 100-1 at 19.)  Plaintiff testified that she bent down as ordered when Sergeant Curley suddenly called another female officer into the search cell for backup.  (Dkt. No. 98-3 at 16.)  According to Plaintiff, another female officer arrived and the two women laughed at Plaintiff then ordered her to sit down on the stone bench inside the search cell, but Plaintiff did not; at that point, Sergeant Curley called for backup.  (Dkt. No. 98-3 16-17, 20; Dkt. No. 100-1 at 14-15, 20.)  Plaintiff testified that, still crying, she was in the process of slowly sitting down when three male officers rushed into the search cell, including Officer Lucy, who immediately and without saying anything pushed Plaintiff onto the bench.  (Dkt. No. 98-3 at 18, 20, 22, 26, 29; Dkt. No. 100-1 at 15, 21.)  Plaintiff has described the push itself differently: at one point she testified that Officer Lucy placed his hands on her shoulders, but she also described him putting his hands on her chest.  (Dkt. No. 98-3 at 23-24; Dkt. No. 100-1 at 22, 45.)  In any event, she testified that she was two millimeters from the bench when the officer pushed her, and as a result of the push she landed only half on the side of the bench and ended up sliding down onto the floor because the chair was slippery.  (Dkt. No. 98-3 at 22; Dkt. No. 100-1 at 23, 45.)

Officer Lucy's version of events is different.  He testified that he entered the search cell because he heard Plaintiff getting louder and louder in response to Sergeant Curley's verbal commands to sit and stop yelling—not in response to a specific call for backup—and that Plaintiff and Sergeant Curley were the only two people in the search cell.  (Dkt. No. 98-2 at 10-12.)  When Plaintiff continued to yell, he "basically took [his] left hand, touched her shoulder, and asked her to sit down on the bench" and she followed suit and sat down.  (Dkt. No. 98-2 at 12.)  He described their interaction as "a very light touch" that caused Plaintiff to sit of her own volition.  (Dkt. No. 98-2 at 12-13.)  Officer Lucy testified that he never pushed Plaintiff, and she did not fall into the bench as a result of his pushing her.  (Dkt. No. 100-2 at 12.)  According to Officer Lucy, he left after Plaintiff sat down and remained outside the closed door for the rest of the search, and Plaintiff seemed to be complying because there was no more arguing.  (Dkt. No. 98-2 at 13, 15.)

At one point, Plaintiff testified that she does not remember how she landed on the ground or how long she was there because she "blacked out" after the fall and when she came to she was in the jail clinic speaking to the nurse.  (Dkt. No. 98-3 at 30-32; Dkt. No. 100-1 at 32, 35, 47.)

1    Elsewhere, Plaintiff testified that she landed on the ground on her left side and remained there for

2    five minutes while the officers stared at her, then she stood up, crying, telling the officers they

3    should not have done that to her.  (Dkt. No. 100-1 at 24, 29.)  Plaintiff testified that she injured the

4    middle of her spine and her left leg as a result of the push.  (Dkt. No. 98-3 at 28.)

5           C.    *Events Following the Incident*

6           At the nurse's station, Nurse Donna Webb treated Plaintiff.  Nurse Webb asked Plaintiff

7    questions on standard jail medical forms and completed the forms.  (Dkt. No. 98-5 at 9-10.)  On

8    one form, Nurse Webb noted that she observed that Plaintiff appeared depressed, and that Plaintiff

9    reported high blood pressure.  (Dkt. No. 98-6 at 2.)  Nurse Webb did not check the box indicating

10   that Plaintiff reported back injuries.  (*Id.*)  Plaintiff signed and dated the form.  (*Id.*)  On a health

11   inventory form that Nurse Webb signed, she noted no back injuries or other complaints.  (Dkt. No.

12   98-6 at 3.)   At her deposition, Plaintiff confirmed that she did not tell Nurse Webb that Officer

13   Lucy had just injured her, but she testified that she told Nurse Webb she was depressed and had

14   suffered a back injury.  (Dkt. No. 100-1 at 33.)

15          Plaintiff later submitted grievances to the Sheriff's department following the incident.

16   (Dkt. No. 100 ¶¶ 7-8; Dkt. No. 100-5; Dkt. No. 100-6.)  In her first grievance, dated December 29,

17   2012, Plaintiff described how an officer pushed her with both hands on the front of her shoulder

18   causing her to land with her left hip on the stone chair.  (Dkt. No. 100-5 at 3.)  Officer Lucy

19   testified that he would not have accepted Plaintiff's grievances because they were longer than one

20   page.  (Dkt. No. 100-2 at 14-15, 23.)  The Sheriff's Office grievance policy states that a grievance

21   will be returned to the inmate if it does not comply with the rules set forth by each "pod," but that

22   if the grievance is accepted the officer should provide a written response.  (Dkt. No. 100-10 at 2-

23   3.)  Neither Officer Lucy nor Sergeant Curley were aware of any investigation into or response to

24   Plaintiff's grievances.  (*Id.* at 24; Dkt. No. 100-3 at 12-13, 20.)

25   **II.    Procedural History**

26          Plaintiff first filed suit based on the above-described incident in San Mateo County

27   Superior Court, but her case was dismissed without prejudice after she failed to timely amend.

28   (*See* Dkt. No. 7 at 3.)  Plaintiff then initiated this action in October 2014 against Officer Lucy,

Sergeant Curley, and San Mateo County. (Dkt. No. 1.) As Plaintiff, who was representing herself, was proceeding in forma pauperis, the Court reviewed her complaints under 28 U.S.C. § 1915 several times before ordering the complaint to proceed to service. After Section 1915 review and resolving Defendants' motion to dismiss in December 2015, only one claim remained against a single defendant: the excessive force claim against Officer Lucy. (*See* Dkt. No. 45.)

The parties commenced discovery in January 2016. (*See* Dkt. No. 51.) Discovery was not smooth sailing, as Plaintiff failed to respond or object to any of Defendant's discovery requests and did not appear for discovery hearings as ordered. (*See* Dkt. No. 54; Dkt. No. 60.) After the Court extended the discovery deadline to account for Plaintiff's delay, Defendant filed a motion for summary judgment. (Dkt. No. 69.) Shortly thereafter, the Court granted Plaintiff's motion to appoint counsel for all purposes. (Dkt. No. 71, 73.) Plaintiff's newly appointed counsel then sought to re-open discovery; the Court permitted limited discovery relating to liability and offered Defendant the opportunity to take a further deposition of Plaintiff. (Dkt. No. 82.) The Court's Order indicated that the parties would discuss briefing Defendant's summary judgment motion at the close of this limited discovery period.

Following a case management conference, the Court set a February 3, 2017 deadline for filing summary judgment motions. (Dkt. No. 97.) Defendant's renewed motion for summary judgment followed on that deadline. (Dkt. No. 98.) On February 24, 2017, Plaintiff filed a motion for partial summary judgment as to certain affirmative defenses. (Dkt. No. 102.)

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

#### A. Evidentiary Objections

##### 1. *Plaintiff's Objections to Defendant's Evidence in Support of his Motion*

Plaintiff objects to her own deposition testimony as well as her correctional medical records that were submitted as Exhibit E to the declaration of Margaret Tides. (*See* Dkt. No. 101 at 2.) Defendant urges the Court to disregard or overrule Plaintiff's evidentiary objections because they were filed separately from Plaintiff's opposition brief in contravention of Civil Local Rule 7-3(a). (Dkt. No. 105 at 10.) *See* N.D. Cal. Civ. L.R. 7-3(a). ("Any evidentiary and procedural

objections to the motion must be contained within the brief or memorandum.").  By ignoring Rule 7-3(a), Plaintiff fit more argument into her brief than she otherwise could have—and more than Defendant did, because his objections were properly within his brief.  The Court therefore overrules Plaintiff's objections.[2]  *See* Civ. L.R. 11-4(a)(2), 11-4(a)(4).

2.    *Defendant's Objections to Plaintiff's Opposition Evidence*

Defendant also objects to evidence that Plaintiff submitted in support of her opposition to Defendant's summary judgment motion.  First, Defendant "objects to Plaintiff's reliance on her pleadings as substantive evidence." (Dkt. No. 105 at 7.)  Specifically, Defendant laments that Plaintiff repeatedly cites her pleadings and prior Court orders reviewing the pleadings to oppose summary judgment.  (*Id.* at 8-9.)  Plaintiff is free to refer to her pleadings.  However, allegations in the pleadings and in the Court's prior orders evaluating the pleadings are not admissible evidence of what happened during the incident.

Next, Defendant objects to the Court's consideration of grievances that Plaintiff filed with San Mateo County Sheriff and the County District Attorney, contending that they are unauthenticated and constitute inadmissible hearsay.  (Dkt. No. 105 at 9.)  In her declaration,

---

[2] The Court would reach the same conclusion if it considered the substance of Plaintiff's objection.  Plaintiff first asks the Court to exclude her own deposition testimony on the grounds that defense counsel never qualified her as a competent witness.  (Dkt. No. 101 at 2.)  While objections to a deponent's competency are appropriate after the deposition and at trial, *see Luangisa v. Interface Operations*, No. 2:11-cv-00951-RCJ-CWH, 2011 WL 6029880, at *10 (D. Nev. Dec. 5, 2011) (citations omitted), Plaintiff's competency objections are without merit.  Plaintiff contends that she was not competent to testify because she was not represented by counsel at the time of her deposition, but lack of counsel is no barrier to competence.  Next, Plaintiff maintains that her mental illness prevented her from providing competent testimony, as reflected in her testimony that she takes medication every day and was often confused by questioning.  But "a mentally ill person can still be a competent witness." *In re Penn*, 443 F.2d 663, 666 (D.C. Cir. 1970) (citations omitted).  Third, Plaintiff faults Defendant for declining to further depose her once counsel was appointed.  Defendant was under no obligation to do so, and his refusal in no way renders Plaintiff's earlier testimony incompetent.  At bottom, competence is a question for the court, and the Court concludes that Plaintiff is competent to testify about her recollection of events; issues with Plaintiff's memory or disability are grounds for cross-examination, not exclusion.  The Court would likewise overrule Plaintiff's objection to Exhibit E, Plaintiff's correctional medical records.  Plaintiff argues that the records are not authenticated and are hearsay.  Nurse Webb authenticated the documents through her deposition testimony.  (*See* Dkt. No. 105-5 at 7-15.)  Moreover, the content of the forms is admissible as either the statement of a party opponent, a prior inconsistent statement by Plaintiff, a statement of Plaintiff's then-existing mental, emotional, or physical condition, or statements made for the purpose of medical diagnosis.  *See* Fed. R. Evid. 801(d)(1) & (2) and 803(3) & (4).

Plaintiff's counsel avers that Sergeant Curley confirmed that the grievance was a true and correct copy. (Dkt. No. 100 ¶ 7.) At her deposition, Sergeant Curley confirmed that the grievance forms appeared to be the types of forms inmates file at the county jail—without confirming that the particular form was Plaintiff's grievance form—and agreed that Plaintiff's name appeared on the forms. (Dkt. No. 100-3 at 11-21.) This is enough to authenticate the forms. As for hearsay, while they may not be offered as proof that what she says in the forms is true, they are admissible evidence as to what she reported. *See* Fed. R. Evid. 801(d)(1)(B). Indeed, in other excessive force cases courts have considered the plaintiff's grievance forms to be "the evidentiary equivalent of a declaration." *See Browne v. San Francisco Sheriff's Dep't*, 616 F. Supp. 2d 975, 980 (N.D. Cal. 2009) (record citation omitted).

Finally, Defendant objects to the Court's consideration of Plaintiff's booking photo, on the grounds that it is not relevant, lacks probative value, and is not authenticated. (Dkt. No. 105 at 10.) The Court does not rely on the booking photo and thus the objection is moot.

B.      Officer Lucy is Not Entitled to Summary Judgment

Plaintiff alleges that Officer Lucy violated her Fourteenth Amendment right to be free from excessive force under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To prevail on a Section 1983 claim, Plaintiff must show that the alleged conduct both occurred "under color of state law" and deprived Plaintiff of a constitutional or federal statutory right. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003). Here, Officer Lucy concedes that he was acting under color of state law, as he was on duty as a correctional officer at the time of the incident. (*See* Dkt. No. 98 at 7.) Thus, the only question on Defendant's motion is whether Officer Lucy is entitled to summary judgment because there is no dispute of fact that he did not use excessive force, or, even if there is, whether he is entitled to qualified immunity.

1.      *Constitutional Violation*

The Due Process Clause of the Fourteenth Amendment protects pretrial inmates from excessive force. To determine whether an officer violates a pretrial detainee's constitutional rights

by using excessive force, the Court considers whether the use of force violates the standard of reasonableness set forth in the Fourth Amendment.[3] *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *see also Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002) (noting that the Supreme Court "has not expressly decided whether the Fourth Amendment's prohibition on unreasonable searches and seizures continues to protect individuals during pretrial detention" but the Ninth Circuit has applied the Fourth Amendment to such claims) (citation omitted), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1070, 1076 (9th Cir. 2016); *Pierce v. Multnomah Cnty.*, 76 F.3d 1032, 1043 (9th Cir. 1996), *cert. denied*, 519 U.S. 1006 (1996) (applying the Fourth Amendment's reasonableness standard); *see also Fuller v. Orange Cnty.*, 276 F. App'x 675, 678 (9th Cir. 2008) (holding that a claim for excessive force during booking arises under the Fourth Amendment).

Whether a defendant's use of force was "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Thus, the question is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. In making that determination, courts consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Kingsley v. Hendrickson*, 135 S Ct. 2466, 1472 (2015) (citing *Graham*, 490 U.S. at 296). The *Kingsley* factors are not exclusive; instead, the Supreme

---

[3] Some Ninth Circuit authority holds that a claim for excessive force during the post-arrest booking process arises directly under the Fourth Amendment. *See Fuller v. Orange Cnty.*, 276 F. App'x 675, 678 (9th Cir. 2008). Some courts have applied the Fourteenth Amendment's standard to such claims. *See, e.g.*, *Williams v. City of Las Vegas*, 34 F. App'x 297, 299 (9th Cir. 2002). But that standard applies to post-arraignment pretrial detainees, *see Browne v. San Francisco Sheriff's Dep't*, 616 F. Supp. 2d 975, 982-83 (N.D. Cal. 2009) (citation omitted), and Plaintiff had just been arrested and had not yet been arraigned. To the extent that this dispute existed before, the Supreme Court put it to rest in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015), noting that the Fourth Amendment's objective reasonableness standard applies to excessive force claims by pretrial detainees that arise under the Fourteenth Amendment.

Court expressly cautioned that courts should consider all of the circumstances it deems relevant.

The Ninth Circuit has noted that "[b]ecause such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment . . . in excessive force cases should be granted sparingly." *Santos v. Cates*, 287 F.3d 846, 853 (9th Cir. 2002) (citation omitted). Summary judgment may be appropriate, however, when the facts concerning an incident are largely undisputed. *See Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("[D]efendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."). When the circumstances show that there is no need for force, any force used is constitutionally unreasonable. *See Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) (citations omitted); *Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000), *vacated on other grounds sub. nom. Cnty. of Humboldt v. Headwaters Forest Def.*, 534 U.S. 801 (2001); *see also Motley v. Marks*, 432 F.3d 1072, 1089 (9th Cir. 2005), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (per curiam). For example, "[a] totally gratuitous blow with a policeman's nightstick may cross the constitutional line, and . . . we do not believe that a serious or permanent injury is a prerequisite to a claim under Section 1983." *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (cited with approval by *Fontana*).

There are disputed facts about the incidents that took place in the search cell. As a threshold matter, Officer Lucy asks the Court to discount Plaintiff's version of events altogether because she testified that she blacked out and has no memory of events. Were the Court to do so, it would be left only with Officer Lucy's account of the incident—that is, it would be undisputed that he only applied a "light touch" to Plaintiff by placing one hand on her shoulder that caused her to move to a seated position on the bench of her own volition. Based on this account, there would be no triable issue that Officer Lucy acted reasonably under the circumstances. The Court, however, cannot discount Plaintiff's testimony in its entirety on summary judgment. The scope of the blackout Plaintiff described is not clear; sometimes she stated that she only had difficulty remembering dates and times, other times she suggested that she only blacked out once she hit the

floor of the search cell after the push and fall. Drawing all inferences in Plaintiff's favor, the Court cannot conclude that Plaintiff has absolutely no recollection of events and discount her version of events altogether. Moreover, while Plaintiff's memory of events was not clear, it need not be to create a factual dispute of the version of events for the jury to resolve. *See, e.g.*, *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002) ("Simply because [plaintiff] has no clear recollection of the act which he contends caused his severe injury does not mean that his claim must fail as a matter of law."); *Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir. 1991) (holding that "if the version of the shooting favorable to [plaintiff] is believed, the trier of fact could reasonably find that the officers used excessive force against him, even though [plaintiff], himself, had no recollection of the events that caused his injuries"). Thus, in determining whether Defendant used excessive force against Plaintiff, the Court credits Plaintiff's version of events. *See Furnace v. Sullivan*, 705 F.3d 1021, 1026-27 (9th Cir. 2013).

Based on Plaintiff's version of events, Officer Lucy rushed into the search cell after a fellow officer called for backup. When he entered he saw Plaintiff, naked, crying, and hovering near the stone bench, and there were four other officers present in the room. He used two hands to push Plaintiff in the shoulder or chest towards the stone bench. She was close to the bench—just two millimeters away—but slid onto the floor as a result of the push. Based on Plaintiff's deposition testimony, she hurt her back and leg as a result of the fall; there are no medical records to corroborate that claim, but there are grievances in which she complained of injuring her hip.

The reasonableness of Officer Lucy's conduct is a jury question. With respect to the type of force used and the need for force, based on Plaintiff's version of events, an officer inside the search cell called for backup due to a perceived non-compliant inmate during a search. When Officer Lucy entered the search cell, Plaintiff concedes that she remained standing and crying— thus, she still failed to comply with the orders—and the officer used a low level of force—a push—to bring her into compliance. Officer Lucy skipped the first two levels of the Sheriff's Department's "use of force" protocol—command presence and light touch—and moved directly to a push, which suggests that a jury could find his use of force as unreasonable. What is more, while a push, under some circumstances, is deemed to be minimal force, *see Nichols v. City of*

*Vallejo*, No. 2:12-cv-02564-KJM-AC, 2014 WL 127999, at \*1, 6 (E.D. Cal. Jan. 14, 2014) (noting that a shove in the middle of the chest with an open right palm while telling the plaintiff to move back where the plaintiff did not fall down was minimal), here Plaintiff alleges that the push slammed her into a stone bench then caused her to fall to the ground. The strength of that force, and whether Plaintiff slid to the ground as a result of the force or merely because the bench was slippery, is a question for a jury to decide. For that reason, Defendant's insistence that the force must have been minimal and therefore reasonable because Plaintiff conceded that she was just a short distance away from the bench is a non-starter. The force, not the distance matters; if an officer slammed an inmate against a brick wall for no reason, the force of the push could be excessive whether the inmate was two feet or two inches away.

The extent of Plaintiff's injury also supports sending this case to a jury. On the one hand, Plaintiff testified that she told Nurse Webb that Officer Lucy had injured her back and she testified at her deposition that he injured her back and leg, and her grievance form states that he injured her hip. On the other hand, there are no medical records to corroborate that testimony, and there is some suggestion that Plaintiff's back and hip pain actually resulted from prior work-related injuries, not this incident.

As for the other factors, based on Plaintiff's version of events Officer Lucy made no effort to temper or limit the amount of force, skipping the "command presence" and "light touch" shows of force and immediately pushing Plaintiff. Next, as for the threat reasonably perceived by the officer, Plaintiff testified that Officer Lucy responded to a call for backup from the officer inside the search cell.[4] It would not be unreasonable for an officer responding to a call for backup to use a minimal amount of force, especially upon entering the room and viewing the inmate refusing to comply with the officer's order to sit. On the other hand, Plaintiff contends that there were five officers in the search cell when Officer Lucy pushed her; "command presence" of so many

---

[4] In his reply, Officer Lucy attaches new evidence to support his position that the "security problem at issue was significant" because "incoming arrestees often have weapons and contraband, presenting a real threat to inmates and officers." (Dkt. No. 105 at 14 (record citation omitted).) Officer Lucy made no argument in his opening brief that Plaintiff presented a threat to safety, so the Court does not consider this evidence and argument raised for the first time in his reply.

As for whether Plaintiff was "actively resisting," she maintains that she was not—rather, she was very slowly complying with Sergeant Curley's order. This factor suggests that any force was unreasonable.

Defendant's other arguments in support of summary judgment are unpersuasive. They either ignore Plaintiff's version of the facts or assume that the push was the "light touch" Defendant described and that Plaintiff's sliding off the bench onto the floor had nothing to do with the push. But a reasonable inference to draw is that Plaintiff fell onto the floor due to the force of the push.

In short, there are factual disputes about the type and amount of force used and the circumstances that led up to the use of force. More importantly, accepting Plaintiff's version of events as true and drawing all inferences in her favor, a reasonable jury could find that Officer Lucy's force was unreasonable and, consequently, that he violated Plaintiff's right to be free from excessive force. Summary judgment is not appropriate.

### 2. *Qualified Immunity*

Officer Lucy argues that, even assuming his actions are found to be unconstitutional, it would not have been clear to a reasonable official that such conduct was unlawful and that therefore he is entitled to qualified immunity.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*). To determine whether qualified immunity applies, the Court decides whether "(1) the officer's conduct violated a constitutional right; and (2) the right which was violated was clearly established at the time of the violation." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010). The Supreme Court has instructed that district courts may "exercise their sound discretion in deciding which of the two prongs of qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236. The officer is entitled to immunity if he did not violate a constitutional right or if he violated a constitutional right that was not clearly established. *Id.*

"[C]learly established law [is not to be defined] at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Instead, in deciding whether a constitutional right was clearly established at the time of the alleged violation, a court must ask "whether the violative nature of *particular conduct* is clearly established." Id. (emphasis added). "The plaintiff bears the burden to show that the contours of the right were clearly established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). "This inquiry, it is vital to note, must be undertaken in light of the *specific context* of the case, not as a broad general proposition [.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. at 236. In making this determination, courts consider the state of the law at the time of the alleged violation and the information that the official possessed to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *C.B. v. City of Sonora*, 769 F.3d 1005, 1026 (9th Cir. 2014) (citation omitted).

At the time of the incident in question, the law was clearly established that any force is unreasonable if no force is needed. *See Motley*, 432 F.3d at 1089; *Fontana*, 262 F.3d at 880; *Headwaters*, 240 F.3d at 1199. Drawing all inferences in Plaintiff's favor, a reasonable trier of fact could conclude that Plaintiff—a petite, elderly woman—was complying with Sergeant Curley's order to sit down when Officer Lucy rushed into search cell and pushed Plaintiff onto the chair with such force that she fell to the ground injuring her hip and back. Under this set of facts, because Plaintiff was complying with the officer's orders and did not otherwise present a threat to anyone's safety, there was no need for any force and thus, it was clearly established that the push would be excessive. *See Motley*, 432 F.3d at 1089; *Fontana*, 262 F.3d at 880; *Headwaters*, 240 F.3d at 1199. Thus, while no prior case expressly prohibits the use of the precise force at issue in this case, this general rule against unnecessary force would sufficiently alert a reasonable officer that pushing a pretrial detainee like Plaintiff to the ground under the circumstances she describes violated her constitutional rights.

Defendant's arguments to the contrary are unavailing. Defendant's qualified immunity

argument asks the Court to infer that the push caused Plaintiff to lower herself to the bench and that, unrelatedly, she "slid" onto the ground. That is one inference the Court could draw, and drawing such inferences the Court likely would conclude that Officer Lucy is entitled to qualified immunity. But another reasonable inference is that, because she was so close to the bench, the force of the push caused Plaintiff to fall from the bench to the floor. A reasonable officer would recognize that such an amount of force, when an inmate is complying—albeit slowly—with another officer's commands violates clearly established law to be free from excessive force because no force was necessary under those circumstances and it was well established at the time of the incident that when no force is necessary, any force is unreasonable under the Fourth Amendment. *See Motley*, 432 F.3d at 1089; *Fontana*, 262 F.3d at 880; *Headwaters*, 240 F.3d at 1199.

The cases on which Defendant relies do not change the Court's conclusion. First, Defendant cites *Graham v. Connor*, 490 U.S. 386 (1989). (Dkt. No. 98 at 7; Dkt. No. 105 at 17.) There, the Supreme Court stated that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," is a violation of due process. *Id.* at 396-97 (citation omitted). Following that language, Defendant argues that "[i]n the circumstances with which Defendant was confronted, a reasonable officer would believe a 'push' on the shoulder, moving an arrestee into a seated position, would be lawful, **even if** the arrestee subsequently slid to the floor because her butt was half off the bench." (Dkt. No. 105 at 16 (emphasis in original).) Defendant's reliance on *Graham* is unpersuasive for several reasons. First, the language Defendant cherry picks from the *Graham* was a quotation from *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973). In *Graham*, however, the Supreme Court rejected the approach in *Johnson*, which applied a substantive due process analysis to a pretrial detainee's excessive force claim. 490 U.S. at 392-93, 397-98. Thus, the idea that not every push is a violation of due process misses the point, since the inquiry now is objective reasonableness under the Fourth Amendment. Moreover, neither *Graham* nor *Johnson* involved an officer pushing a pretrial detainee. *See Graham*, 490 U.S. at 389. Finally, that not *every* push is excessive force does not mean that a push sufficient to knock a pretrial detainee to the ground

15

when no force is needed is not excessive force. In short, nothing in *Graham* undermines the clearly established law of the Ninth Circuit that when no force is necessary, any force—including a push—is unreasonable under the Fourth Amendment. *See Fontana*, 262 F.3d at 880; *Motley*, 432 F.3d at 1089.

At oral argument Defendant argued for the first time that it is not clearly established that absent medical records demonstrating proof of injury from a push a push cannot constitute excessive force. Defendant cited two cases at oral argument in support of this proposition. Neither case appeared in his opening brief or reply and thus Defendant's reliance on these new cases is improper. *See* Civ. L.R. 7-4(a)(5). Courts routinely refuse to consider argument or authorities raised for the first time in a reply brief because the opposing party has no meaningful opportunity to respond. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("*see, e.g.*, *Bernard v. Donat*, No. 11-cv-03414-RMW, 2012 WL 10138, at *3 (N.D. Cal. Jan. 2, 2012) ("[C]onsideration of arguments raised for the first time on reply would prejudice plaintiff if he is not given an opportunity to respond."); *World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of New York, Inc.*, No. 11-01442 SBA, 2011 WL 5118525, at *6 (N.D. Cal. Oct. 28, 2011) ("New evidence or analysis presented for the first time in a reply is improper and will not be considered.") (citation omitted). It is even more unfair and prejudicial to raise new arguments and authorities for the first time at oral argument, taking the opposing party by surprise and affording no opportunity to respond whatsoever.

Nevertheless, the Court addresses Defendant's new cases because they do not demonstrate that Officer Lucy is entitled to summary judgment of qualified immunity. The first is *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010), in which the Supreme Court noted that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."[5] *Id.* at 38 (citation omitted). But *Wilkins* did not apply the Fourth Amendment's objective reasonableness standard; instead, it involved a convicted prisoner and therefore applied the subjective Eighth Amendment standard, which asks whether force was

---

[5] Defendant stated at oral argument that he cited *Wilkins* in his papers, but the Court's review indicates that he did not.

applied in a good-faith effort to maintain or restore discipline or malicious or sadistically to cause harm. *Id.* The Fourth and Eighth Amendment standards are meaningfully different. *See Graham*, 490 U.S. at 397-98 (calling the subjective Eighth Amendment excessive force inquiry "incompatible" with and "less protective" than the Fourth Amendment standard). Further, *Wilkins* went on to note that "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* Thus, Officer Lucy is not entitled to qualified immunity merely because his push did not result in injury. Moreover, it is disputed whether the injury in fact caused Plaintiff injury. She complains that Officer Lucy's push resulted in injuries to her back and leg. She testified as much at her deposition and complained of the injuries in her grievances. Thus, *Wilkins* does not establish that Officer Lucy is entitled to qualified immunity.

Defendant's citation to *Wood v. City of Garden Grove*, 395 F. App'x 467 (9th Cir. 2010), is equally unavailing. Factually, *Wood* is closer to this case: it involved a pretrial detainee injured during booking. The plaintiff alleged that the use of a camera flash and fact that the booking camera struck her while she was having a seizure during booking constituted excessive force. 395 F. App'x at 469. The Ninth Circuit affirmed dismissal of the claims "because any force used to arrest [plaintiff] was de minimus and necessary" and because plaintiff "provide[d] no evidence of any injury." *Id.* (citation omitted). In contrast, once again drawing all inferences in Plaintiff's favor, no force was necessary because she was complying with the officer's orders, albeit slowly. Moreover, as discussed above, there is evidence an injury to her back and hip, although it is not very strong evidence like the medical records Defendant focuses on. Thus, *Wood* also does not support Defendant's qualified immunity defense.

Lastly, Defendant cited this Court's recent decision in *Moody v. Simms*, No. 15-cv-04198-JSC, 2017 WL 1196796 (N.D. Cal. Mar. 31, 2017).[6] At oral argument, Defendant described the

---

[6] Defendant noted that the case was decided after he submitted his papers, but this does not excuse Defendant's citation to the case for the first time at oral argument, as the Local Rules note that at any time before the noticed hearing date, "counsel may bring to the Court's attention a relevant judicial opinion published after the date the opposition or reply was filed by filing and serving a Statement of Recent Decision . . . ." Civ. L.R. 7-3(d)(2). Defendant did not do so.

facts of that case as an officer who used one hand to push an inmate into a wall, which the court found was not excessive force. In *Moody*, however, the Court granted summary judgment to the defendants on only one claim (and declined summary judgment on the others) because the force used by officers in attempting to place a face mask on the plaintiff after he spit on a nurse was objectively reasonable. *Id.* at *5-6. Those facts are not close to this case.

Because the law is and was clearly established that any force is unreasonable where no force is necessary, and because a reasonable trier of fact could find that no force was needed and, thus, that the force used was excessive, Officer Lucy is not entitled to summary judgment on grounds of qualified immunity.

## III. Plaintiff's Motion

Plaintiff moves for partial summary judgment on 18 of the affirmative defenses in Defendant's answer because they either fail as a matter of law or there is no genuine dispute of material fact as to others.[7] In his opposition, Defendant argues that the Court should summarily deny Plaintiff's motion as procedurally improper or consider it a motion to strike and permit Defendant leave to amend. As for the affirmative defenses for which Plaintiff seeks summary judgment, Defendant only substantively opposes summary judgment as to the Thirteenth and Nineteenth (unclean hands) and Sixteenth (mitigation of damages).

### A. The Court Will Consider Plaintiff's Motion for Partial Summary Judgment

Defendant first urges the Court to deny Plaintiff's motion for partial summary judgment summarily because it is procedurally improper as (1) the Court's Pretrial Order did not allow for it, (2) if it did, it was filed after the deadline for dispositive motions, and (3) Plaintiff has not made a showing of good cause to modify that order or because it is really a motion to strike disguised in summary judgment's clothing. (Dkt. No. 106 at 3.)

---

[7] Specifically, Plaintiff moves for summary judgment on Defendant's First, Second, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Eighteenth, Nineteenth, Twentieth, Twenty-First, and Twenty-Second Affirmative Defenses. (*See* Dkt. No. 102 at 7.) Plaintiff has not challenged the Third (good faith), Fourth (good faith and lawful acts), Fifth (qualified immunity), and Seventeenth (reasonable force for a valid law enforcement purpose) affirmative defenses, which Defendant continues to assert. (*See* Dkt. No. 106 at 5.)

Defendant is correct that a pretrial conference order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). In the Pretrial Order governing this case, the Court set a February 3, 2017 deadline for summary judgment motions. (Dkt. No. 97.) At the case management conference and at all other times, the Court and the parties only anticipated Defendant's motion for summary judgment. Nonetheless, Plaintiff filed a motion for partial summary judgment on February 24, 2017—three weeks after the dispositive motion deadline. (Dkt. No. 102.)

The Court acknowledges that counsel stepped in late in the game to represent Plaintiff. To that end, in the parties' September 2017 joint case management statement, the parties referenced defendant's motion for summary judgment but Plaintiff noted that "[a]s newly-appointed counsel for Plaintiff continues to assess the case, Plaintiff may determine that additional motions may be appropriate." (Dkt. No. 80 at 4.) But by the January 2017 joint case management statement, Plaintiff removed any reference to other potential motions, noting only that she anticipated responding to Defendant's re-filed summary judgment motion. (Dkt. No. 95 at 5.) Indeed, at the January 19, 2017 CMC the Court and parties discussed the remaining case schedule, and agreed that Defendant would file a new summary judgment motion; Plaintiff did not discuss the possibility of filing her own summary judgment motion. Nevertheless, the Court's Pretrial Order set a February 3, 2017 for summary judgment motions without cabining the order to Defendant's motion only. (Dkt. No. 97.) However, Plaintiff not only filed her motion for partial summary judgment after the applicable deadline, but also failed to seek leave to do so on the basis of Rule 16(b) by demonstrating "good cause" for its failure to file a timely motion.

A scheduling order "is not a frivolous piece of paper, idly entered into, which can be cavalierly disregarded without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). Far from "baseless and meandering procedural arguments" as Plaintiff characterizes them (Dkt. No. 108 at 1), Defendant's procedural arguments have teeth: it is appropriate to either strike or deny a motion as untimely where it is filed after the deadline without an accompanying request to modify the scheduling order. *See id.* at 610 n.7; *see also U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985) (holding

that a district court properly denied a motion as untimely where it was filed after the applicable scheduling order deadline and the movant "never requested a modification" of the scheduling order), *superseded by statute on other grounds as recognized in Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996); *Frietas v. Thomas*, No. CV-13-01364-PHX-SRB (ESW), 2015 WL 651032, at *3 (D. Ariz. Oct. 28, 2015) ("Ninth Circuit case law supports a district court's denial of a motion filed after the applicable scheduling order deadline on the ground that the movant did not request to modify the deadline."). In denying untimely motions, courts have noted that the moving party suffers no prejudice from the denial, as it is free to move for judgment as a matter of law on the same issues at trial. *See, e.g.*, *DZ Bank AG Deutsche Zentral-Genossenschaftbank v. Connect Ins. Agency, Inc.*, No. C14-5880JLR, 2015 WL 12930131, at *1 n.1 (W.D. Wash. Dec. 10, 2015).

However, as the Court has already determined that this matter will proceed to trial, and resolving Plaintiff's motion will not prejudice Defendant but rather narrow the issues for trial, the Court will consider Plaintiff's motion despite its procedural impropriety.

B.  <u>Analysis</u>

As Defendant fails to contest that summary judgment is appropriate as to the majority of affirmative defenses, the Court will grant Plaintiff's motion for summary judgment as to the First, Second, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Fourteenth, Fifteenth, Eighteenth, Twentieth, Twenty-First, and Twenty-Second affirmative defenses Plaintiff supported its motion with papers that did not on their face reveal a genuine issue of material fact. *See Henry v,. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Substantively, Defendant has opposed Plaintiff's motion only as to the Thirteenth and Nineteenth affirmative defenses that allege unclean hands and the Sixteenth affirmative defense that alleges mitigation of damages.

As to all of the affirmative defenses, Defendant urges the Court to construe Plaintiff's motion as a motion to strike and to permit Defendant to amend its answer. But Plaintiff's motion does not pertain to the pleadings—which, the Court notes, asserts almost entirely boilerplate affirmative defenses that likely would not have passed muster under Rule 12(f). Instead, Plaintiff insists, the case is at the summary judgment stage, so the Court considers the record evidence, not

the allegations in the pleadings, and that it is too late to strike the pleadings because Plaintiff did not move to do so within 21 days after being served with the answer. While Rule 12(f) places a time limit on when a party can move to strike insufficient defenses, it places no such restrictions on when the Court may do so. *See* Fed. R. Civ. P. 12(f)(1). Accordingly, where appropriate, the Court will consider striking certain affirmative defenses.

### 1. *Evidentiary Objections*

Defendant objects to the consideration of Plaintiff's grievances and pleadings as evidence on Plaintiff's summary judgment motion. (Dkt. No. 106 at 10.) Defendant objected to this evidence when Plaintiff relied on it in the context of opposing Defendant's summary judgment motion. The same result follows here. Specifically, the Court overrules the objections to Plaintiff's grievances, which are "the evidentiary equivalent of a declaration," *Browne*, 616 F. Supp. 2d at 980, but sustains the objection to considering pleading allegations as substantive evidence. As discussed above, Plaintiff is free to reference the pleadings and the Court's orders settling the pleadings, but neither the pleading allegations nor the Court's orders is evidence that Plaintiff can use to sustain her burden of proof on summary judgment or at trial.

### 2. *Challenged Affirmative Defenses*

#### a. Unclean Hands

In his answer to Plaintiff's Third Amended Complaint, Defendant alleged that Plaintiff "volitionally engaged in the conduct of which Plaintiff now complains, and Plaintiff's claims are barred by virtue of the doctrine of unclean hands." (Dkt. No. 47 ¶ 44; *see also id.* ¶ 19 ("Plaintiff cannot take advantage of her own wrongdoing, and her claims are therefore barred.").) The Court refers to these affirmative defenses—the Thirteenth and Nineteenth—together as asserting the defense of unclean hands.

On a motion to strike the Court likely would have stricken the defense as conclusory, since the answer lacks any supporting facts or explanation as to how the defense applies to this case. *See, e.g.*, *Hiramanek v. Clark*, No. 13-00228, 2015 WL 693222, at *3 (N.D. Cal. Feb. 18, 2015). But Plaintiff did not move to strike. Instead, Plaintiff now seeks summary judgment on the unclean hands affirmative defense on the grounds that it fails as a matter of law because the

doctrine is an equitable principle that does not apply given that Plaintiff seeks only money damages. (Dkt. No. 102 at 14-15.)  In passing, Plaintiff also argues that even if the doctrine were applicable to her monetary claims, there is no evidence to support its application.  (*Id.* at 15 n.4.)  Defendant argues that "whether or not" the doctrine itself applies, its principles should apply.  (*See* Dkt. No. 106 at 6-7.)

"The doctrine of unclean hands generally applies to prevent a party from obtaining equitable relief and profiting from their own misconduct."  *Ganley v. Cnty. of San Mateo*, No. C06-3923 TEH, 2007 WL 902551, at *5 (N.D. Cal. Mar. 22, 2007).  The defense "closes the doors of equity" to a party who has acted in bad faith relative to the matter before the court.  *Graphics Scis., Inc. v. Int'l Mogul Mines Ltd.*, 397 F. Supp. 112, 127 (D.D.C. 1974).  The bad faith or inequitable conduct must relate directly to the subject matter of the claim, *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841-42 (9th Cir. 2002), and the party asserting the defense must have been prejudiced by the bad faith conduct, *see Dream Games of Ariz. Inc. v. PC Onsite*, 561 F.3d 983, 990 (9th Cir. 2009).  "Unclean hands applies when it would be inequitable to provide the plaintiff any relief, and provides a complete defense . . . ."  *Escriba v. Foster Poultry Farms*, 793 F. Supp. 2d 1147, 1169 (E.D. Cal. 2011) (citations omitted).

Plaintiff argues that the defense is improper because it does not apply to actions at law. (*See* Dkt. No. 102 at 14-15.)  Indeed, the Supreme Court has held that the doctrine "does not apply where Congress authorizes broad equitable relief to serve important national policies."  *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361 (1995).  Accordingly, as Defendant concedes, some courts within the Ninth Circuit have declined to apply the defense of unclean hands to actions at law. But, as one court in this District has held, "[w]hile the Supreme Court refused to apply the doctrine of unclean hands in the context of a suit under the Age Discrimination in Employment Act, no available case law exists to suggest that the defense is inapplicable in the context of § 1983 actions."  *Ganley*, 2007 WL 902551, at *5 (citing *McKennon*, 513 U.S. at 361). A number of courts have declined to strike unclean hands defenses from Section 1983 actions, thus suggesting that it is possible that the doctrine applies.  *See, e.g.*, *Hiramanek*, 2015 WL 693222, at *3 (in Section 1983 case, striking unclean hands defense as conclusory but granting

22

leave to amend); *Ganley*, 2007 WL 902551, at *5.

The cases Plaintiff cites are inapposite. In *Kincaid v. City of Fresno*, No. 1:06-CV-1445 OWW SMS, 2007 WL 833058, at *5 (E.D. Cal. Mar. 19, 2007), a Section 1983 case, the Court declined to dismiss the complaint based on the doctrine of unclean hands, but did not decide whether unclean hands applied, noting that the defense "if applicable, is inherently factual and cannot be decided on a pleading motion." Thus, Plaintiff's representation that *Kincaid* "ruled" that the doctrine does not apply to Section 1983 cases is wrong. (*See* Dkt. No. 108 at 3 n2.) Plaintiff's reliance on *Harley-Davidson Credit Corp. v. Turudic*, No. 3:11-cv-1317-HZ, 2012 WL 3314919, at *8 (D. Or. Aug. 10, 2012) fares no better, as it was not a Section 1983 case at all. There, the court concluded that the doctrine did not apply to a breach of contract where the plaintiff sought only monetary damages, but it did not purport to decide whether the doctrine might apply to Section 1983 claims. Instead, as in *Ganley*, based on the absence of "controlling or persuasive precedent to the contrary," the Court cannot conclude as a matter of law that the doctrine of unclean hands does not apply to Section 1983 claims. 2007 WL 902551, at *5.

Next, Plaintiff argues in a footnote in her opening brief and in her reply that even if the defense applies to this case, there is no evidence in the record that Plaintiff "acted in any fraudulent or deceitful manner" related to the subject matter of her claim such that she is entitled to summary judgment on the affirmative defense. (Dkt. No. 102 at 15 n.4 (citation omitted).) In his opposition, Defendant appears to abandon the unclean hands defense altogether, instead asserting that the "parallel doctrine of 'fraud on the court'" applies here. (Dkt. No. 106 at 6.) At bottom, Defendant laments that Plaintiff (1) did not produce her complete medical records during discovery; (2) was untruthful at her deposition about her physical injuries and the prior cases she brought litigating the source and scope of those injuries. (*See* Dkt. No. 106 at 8-9.) To the extent that Defendant still seeks to assert the unclean hands defense, he has failed to establish that there is a triable issue that it applies. Even viewing the evidence in the light most favorable to Defendant, he has not established a triable issue as to how Plaintiff's conduct prejudiced him or that Plaintiff—who was representing herself and did not have the benefit of counsel during the time of the alleged misconduct—acted in bad faith. Nor has Defendant adduced evidence sufficient to

raise a genuine dispute of material fact as to whether Plaintiff's conduct constituted a fraud on the court. *See Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003) (noting that fraud on the court requires a "grave miscarriage of justice" and "[n]on-disclosure, or perjury by a party or witness, does not, by itself, amount to fraud on the court") (internal quotation marks and citations omitted).

In his opposition, Defendant urges the Court to construe Plaintiff's motion as a motion to strike and, accordingly, grant Defendant leave to amend. (Dkt. No.106 at 11.) But amending the pleadings would not cure the defect at issue at this stage of litigation: the absence of evidence to raise a genuine dispute of fact as to whether the defense applies. For all of the above reasons, the Court grants Plaintiff's motion for summary judgment on the unclean hands affirmative defense.

### b. *Mitigation of Damages*

In the Sixteenth affirmative defense, Defendant alleges that Plaintiff failed to mitigate damages and is thus precluded from recovering those damages that reasonably could have been avoided by the exercise of due care. (Dkt. No. 47 ¶ 47; *see also id.* ¶ 39 (alleging that Plaintiff failed to use reasonable care to protect herself, thus failing to minimize loss and damages).)

Plaintiff contends that she is entitled to summary judgment on this claim because Defendant "has failed to establish a record that [Plaintiff] has failed to mitigate any injuries or harms she suffered as a result of Defendant's attack against her." (Dkt. No. 102 at 16.) She contends that the record evidence—namely, the grievances she filed and her deposition testimony that she told the nurse she had been injured and told the officers that she was having a panic attack—suggest that she reported her injuries in an effort to mitigate damages. (*Id.* (record citations omitted).) Defendant, for his part, maintains that because Plaintiff has not provided an accounting or any documentation to substantiate her $1.5 million demand, "Defendant is forced to speculate that they are due, at least in part, by Plaintiff's failure to mitigate." (Dkt. No. 106 at 9.)

The defendant bears the burden of persuasion and production on an affirmative defense. *See Pet Food Exp. Ltd. v. Royal Canin USA, Inc.*, No. CC 09-01483 MHP, 2011 WL 1464874, at *6 (N.D. Cal. Apr. 18, 2011). Defendant's showing is inadequate to withstand Plaintiff's motion for partial summary judgment. Defendant has not come forward with any affirmative evidence

from which a jury could reasonably find that Plaintiff failed to take reasonable steps to mitigate damages. Indeed, in his opposition, Defendant does not identify any evidence at all; instead, he concedes that his defense is based on speculation alone. This is insufficient to survive summary judgment. *See In re Brazier Forest Prods., Inc.*, 921 F.2d 221, 223 (9th Cir. 1990) (noting that, where the moving party bears the burden of proof on an issue at trial, such as an affirmative defense, the nonmoving party must make a sufficient showing to establish the existence of evidence as to all elements essential to its defense to avoid summary judgment). Thus, Plaintiff is entitled to summary judgment on this defense.

### 3. *Other Affirmative Defenses*

Defendant did not specifically respond to the 13 remaining affirmative defenses that are the subject of Plaintiff's summary judgment motion, but he did not expressly concede them either.[8] Notably, the defenses are all boilerplate and the Court could have stricken them as conclusory on that basis alone, but Plaintiff did not seek that relief. Plaintiff now urges the Court to deem Defendant's silence as concession that he fails to raise a triable issue on each of them. (*See* Dkt. No. 108 at 2.) The Court does not merely enter judgment on an affirmative defense merely because the non-moving party failed to respond; rather, the Court must be persuaded that there are no genuine issues of material fact and that summary judgment is appropriate as a matter of law. Here, of the remaining affirmative defenses, some are not proper affirmative defenses at all and, as to others, Defendant has failed to establish that there is a genuine dispute of material fact as to whether the defense applies.

#### i. Failure to State a Claim (First Affirmative Defense)

Defendant's first affirmative defense is that "the Complaint fails to state facts sufficient to constitute a claim upon which relief can be granted against" him. (Dkt. No. 47 ¶ 32.) Courts have held that failure to state a claim is not a proper affirmative defense and have stricken the defense while noting that the defendant may still assert the argument as an ordinary defense to liability. *See Hernandez v. Dutch Goose, Inc.*, No. 13-3537, 2013 WL 5781476, at *7 (N.D. Cal. Oct. 25,

---

[8]

2013).  So it is here, especially where the Court has already held that the sole remaining claim for excessive force against Officer Lucy was adequately pleaded.  (*See* Dkt. No. 32 at 12-13.)  The Court strikes this defense.

ii.      Comparative Negligence (Second, Sixth, Seventh Defenses)

Defendant's Second, Sixth, and Seventh affirmative defenses all allege the same species of affirmative defense: that Plaintiff is, in part, legally responsible for causing her own injuries and thus Defendant's liability should be reduced under the principles of comparative fault.  (*See* Dkt. No. 47 ¶¶ 33, 37, 39.)

The Ninth Circuit has stated that there is no right to contribution or indemnification provided in 42 U.S.C. § 1983.  *Allen v. City of Los Angeles*, 92 F.3d 842, 845 n.1 (9th Cir. 1996) (citation omitted), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997).  Courts have interpreted *Allen* as establishing that there is no right of indemnification or contribution under Section 1983.  *See Frary v. Cnty. of Marin*, No. 12-cv-03928-MEJ, 2015 WL 1284280, at *2 (N.D. Cal. Mar. 19, 2015) (collecting cases).  Some courts have extended that reasoning a step further, holding that "[c]oncepts of comparative fault or indemnification are not applicable in actions filed under 42 U.S.C. § 1983."  *Miller v. Schmitz*, No. 1:12-cv-0137 LJO SAB, 2013 WL 5754945, at *5 (E.D. Cal. Oct. 23, 2013) (collecting cases from the Tenth Circuit and California district courts); *Jones v. Cnty. of San Bernardino*, No. EDCV 15-00080-DTB, 2016 WL 4425711, at *16 (C.D. Cal. Aug. 17, 2016) ("Because comparative fault is inapplicable on [a] Section 1983 claim, the Court declines to consider whether [plaintiff's] own conduct contributed to his harm.")(citation omitted); *see also Frary*, 2015 WL 1284280, at *2 (the parties agreed that Section 1983 claims are not subject to comparative fault).  Defendant is free to contest causation at trial: traditional tort law causation principles apply to Section 1983 claims, *see Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2005), and Plaintiff must establish both causation in fact and proximate cause to prevail on her claim, *see Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).  But the comparative fault affirmative defenses fail as a matter of law as they are inapplicable to Plaintiff's claim.

To the extent that the Sixth and Seventh affirmative defenses allege that Plaintiff

proximately caused or contributed to her own injuries, they are not valid affirmative defenses either. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *see, e.g.*, *Hiramanek*, 2015 WL 693222, at *2 (striking proximate cause and actual cause affirmative defenses with prejudice) (citation omitted); *Quintana v. Baca*, 233 F.R.D. 562, 565 (C.D. Cal. 2005) (striking affirmative defenses that "state that the plaintiff caused the injuries he sustained by his own negligence and omissions" because "this is not a proper affirmative defense; rather, it attack's the plaintiff's contentions that the defendant caused the injuries"). Thus, these affirmative defenses fail as a matter of law and are stricken.

### iii. No Eighth Amendment Violation (Ninth Affirmative Defense)

Defendant next alleges that he never violated the Eighth Amendment because his conduct "was, at most, merely negligent . . . , and Plaintiff is therefore precluded from maintaining claims for violation of civil rights." (Dkt. No. 47 ¶ 40.) It is undisputed that Plaintiff was a pretrial detainee at the time of her incarceration, so her constitutional claims arise from the Due Process Clause not from the Eighth Amendment prohibition against cruel and unusual punishment. *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) (citation omitted). This affirmative defense therefore fails as a matter of law and is stricken.

### iv. Statute of Limitations (Tenth Affirmative Defense)

Defendant's Tenth affirmative defense is that Plaintiff's claim "is barred by the applicable statute of limitations." (Dkt. No. 47 ¶ 41.) Resolving Defendant's motion to dismiss, the Court held that Plaintiff's claim was not time-barred by the applicable two-year statute of limitation. (Dkt. No. 32 at 9-10.) Defendant has not identified any facts to change the Court's conclusion. This affirmative defense fails as a matter of law.

### v. Laches (Eleventh Affirmative Defense)

Defendant's Eleventh Affirmative Defense alleges that Plaintiff's claim "is barred by the equitable Doctrine of Laches." (Dkt. No. 47 ¶ 42.)

"To successfully establish laches, a party must show that (1) there was inexcusable delay in the assertion of a known right and (2) the party asserting laches has been prejudiced."

*O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006); *see Apache Survival Coalition v. United States*, 21 F.3d 895, 905 (9th Cir. 1994). "Laches questions are seldom susceptible of resolution by summary judgment, because where laches is raised as a defense the factual issues involved . . . can rarely be resolved without some preliminary evidentiary inquiry." *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658 (9th Cir. 1980) (internal quotation marks and citation omitted).

Plaintiff argues that laches cannot be raised in defense to this action because it is an equitable defense and Plaintiff brings only a Section 1983 claim for monetary damages. (Dkt. No. 102 at 13 (citations omitted).) Laches is available in Section 1983 civil rights cases where the plaintiff seeks injunctive relief. *See, e.g.*, *Bouman v. Block*, 940 F.2d 1211, 1232 (9th Cir. 1991); *Soules v. Kauaians for Nukolii Campaign Comm'n*, 849 F.2d 1176, 1182 (9th Cir. 1988); *Washington v. Cambra*, No. C-95-0529-VRW, 1997 WL 123132, at *2 (N.D. Cal. Mar. 7, 1997) (citation omitted). But district court cases from within the Ninth Circuit that have held that laches is inapplicable to claims seeking only monetary damages, including Section 1983 claims for monetary damages only. *See, e.g.*, *Graham v. Runnels*, No. 2:07-CV-2291 GGH P, 2012 WL 3028007, at *7 (E.D. Cal. July 24, 2012) (concluding that the "laches argument fails in this § 1983 context" where "plaintiff herein seeks only money damages"). So it is here. The laches defense fails as a matter of law and is stricken.

vi.    Equitable Estoppel (Twelfth and Twentieth Affirmative Defenses)

In the Twelfth and Twentieth Affirmative Defenses, respectively, Defendant alleges that Plaintiff's claim "is barred by the equitable Doctrine of Estoppel" and that she "is estopped from recovering the amounts claimed, or any amount at all." (Dkt. No. 47 ¶¶ 43, 51.)

Judicial estoppel is an "equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."[9] *Klamath v. Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 554 (9th Cir. 2006). It is

---

[9] To the extent Defendant referred to the doctrine of *equitable* estoppel, that defense is also a non-starter here. The doctrine of equitable estoppel extends a limitations period on a claim on equitable grounds. Equitable estoppel "focuses primarily on actions taken by defendant to prevent

invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Generally, judicial estoppel applies when: "(1) the party's current position is clearly inconsistent with its earlier position, (2) the party was successful in persuading a court to accept its earlier position, and (3) the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Williams v. Boeing Co.*, 517 F.3d 1120, 1134 (9th Cir. 2008).

Defendant did not specifically respond to the estoppel argument. However, Defendant did include in his opposition a list of workers' compensation claims that Plaintiff filed alleging injuries to her back and emotional harm, among other things. (Dkt. No. 106 at 8.) But Defendant has not adduced any evidence that Plaintiff successfully persuaded any of those courts or administrative bodies to accept her earlier positions about the cause of certain injuries. Defendant thus fails to raise a genuine dispute of fact as to whether Plaintiff should be judicially estopped, so Plaintiff is entitled to summary judgment as to this affirmative defense.

### vii. Frivolousness (Fourteenth Affirmative Defense)

Next, Defendant alleges that Plaintiff's action is "frivolous, unreasonable and without foundation and therefore Defendant is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and California Code of Civil Procedure §§ 1021.7 and 1038." (Dkt. No. 47 ¶ 45.) To the extent that this is a proper affirmative defense, it fails for a number of reasons. First, the Court already held that Plaintiff's excessive force claim was not frivolous upon Section 1915 review. (*See* Dkt. No. 14 at 3, 7.) Second, there are no state law claims, so the California Code of Civil Procedure does not apply. Finally, as for Section 1988, that provision permits courts to award

---

a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Lukovsky v. San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008). When, as here, estoppel is sought against the government, "there must be *affirmative* misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991) (emphasis added). The Court has already held that Plaintiff's claims were timely filed, so equitable estoppel is irrelevant.

reasonable attorneys' fees to the prevailing party in a Section 1983 action; a finding of frivolousness is not required. *See* 42 U.S.C. § 1988. While Defendant may seek Section 1988 relief, this affirmative defense fails as a matter of law.

> viii.    Failure to Comply with the California Tort Claims Act Presentment Requirement (Fifteenth Affirmative Defense)

Defendant alleges that "any state law claims Plaintiff makes or intends to make are barred due to [her] failure to comply with the claims presentation procedures set forth in California's Tort Claims Act, California Government Code §§ 905 et seq." (Dkt. No. 47 ¶ 46.) This affirmative defense fails as a matter of law. There are no state law claims in Plaintiff's case, and state claims-presentation requirements do not apply to federal civil rights actions. *See Ganley v. Cnty. of San Mateo*, No. C06-3923 TEH, 2007 WL 902551, at *4 (N.D. Cal. Mar. 22, 2007) (citing *Felder v. Casey*, 487 U.S. 131, 150 (1988)). Plaintiff is entitled to summary judgment on this affirmative defense.

> ix.    Waiver of Rights to Amounts Claimed (Twenty-First Defense)

Defendant's Twenty-First Affirmative Defense alleges that Plaintiff's claim is "barred because [she] has waived any rights she may have had to the amounts claimed or any amount at all." (Dkt. No. 47 ¶ 52.) As Plaintiff contends, there is no evidence in the record to raise a triable issue as to whether Plaintiff waived her claims against Officer Lucy. To the contrary, the record indicates that she sought to raise her claims by filing grievances—whether they were accepted or not, she attempted—and also by filing a state court complaint before initiating this action in federal court. Thus, Plaintiff is entitled to summary judgment on this defense.

> x.    Reservation of Rights to Assert Further Defenses (Twenty-Second Affirmative Defense)

Finally, Defendant alleged that, as of the date he filed his answer in December 2015, he had "insufficient knowledge or information on which to form a belief as to whether Defendant may have additional, as yet unstated, defenses available to him" and "reserve[d] the right to assert additional defenses in the event discovery indicates that they would be appropriate." (Dkt. No. 47 ¶ 53.) This affirmative defense is insufficient as a matter of law. "An attempt to reserve

affirmative defenses for a future date is not a proper affirmative defense in itself." *Solis v. Zenith Capital, LLC*, No. C 08-4854 PJH, 2009 WL 1324051, at *7 (N.D. Cal. May 8, 2009) (citation omitted). Rather, "if at some later date defendants seek to add affirmative defenses, they must comply with Rule 15 of the Federal Rules of Civil Procedure." *Id.* Here, the parties have completed discovery, so the rationale underlying the improper defense no longer applies. Plaintiff is entitled to judgment in her favor on this asserted defense.

## CONCLUSION

For the reasons described above, the Court DENIES Defendant's motion for summary judgment, as a jury question remains as to whether Officer Lucy pushed Plaintiff in a manner that constituted excessive force in violation of the Fourteenth Amendment. The Court GRANTS IN PART Plaintiff's motion for partial summary judgment as to certain affirmative defenses. Specifically, the Court enters summary judgment in Plaintiff's favor as to certain defenses and strikes others, as set forth above.

This Order disposes of Docket Numbers 98 and 102.

**IT IS SO ORDERED.**

Dated: April 10, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge